NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY SPINE CENTER, on assignment of ROBERT S.,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,<br><br>Defendant. | Civil Action No. 17-193 (JLL) (JAD)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendant's motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g), (ECF No. 22), and Plaintiff's cross-motion for attorneys' fees, (ECF No. 23). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on the parties' applications. Upon careful consideration of the parties' submissions, and for the reasons stated below, the parties' cross-motions for attorneys' fees are **DENIED**.

I. BACKGROUND

Plaintiff, a healthcare provider in Passaic County, New Jersey, brought this action against Defendant, an insurance provider, for reimbursement of expenses incurred in connection with a medical procedure performed on Robert S., a patient of Plaintiff. (*See* ECF No. 1, Complaint ("Compl.") ¶¶ 1-3). Plaintiff alleged entitlement to such reimbursement under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 et seq. (*Id.* ¶ 6).

1

In the Complaint, Plaintiff alleges that its affiliated doctors performed surgery on patient Robert S. for a total cost of $136,160. (*Id.* ¶¶12-13). Robert S. had an employee welfare benefit plan (the "Plan") that was issued by Defendant. (*Id.* ¶¶ 2-4). The terms of the Plan were set forth in Defendant's Benefit Booklet, which provides that Defendant will reimburse for covered charges. (*Id.* ¶¶ 5, 8). The Benefit Booklet also contains an anti-assignment clause, which states that an employee may direct Defendant to pay health care benefits to a provider, like Plaintiff, who provided the covered services and that Defendant can pay either the covered person or the provider. (*Id.* ¶ 27). The anti-assignment clause further states that the insured patient "may not assign his or her right to take legal action under the Policy to such provider." (*Id.*).

Defendant then reimbursed $44,744.68 to Plaintiff in connection with patient Robert S.'s procedure. (*Id.* ¶¶ 12-13). Plaintiff contested this amount, seeking reimbursement for the full $136,160. (*Id.* ¶23). Plaintiff then received an assignment of the patient's rights to take legal action under the policy, and initiated this ERISA action to recover the $91,452.32 balance. (*Id.* ¶ 26).

On December 12, 2017, the District Court issued an Opinion and Order granting summary judgment in favor of Defendant, dismissing this case in its entirety. (*See* ECF No. 20, Summary Judgment Opinion). In the Summary Judgment Opinion, the Court determined that the policy's anti-assignment clause was valid and enforceable, barring Plaintiff's claims for reimbursement based on the insurance policy covering Robert S. (Summary Judgment Opinion at 6).

On January 22, 2018, Defendant filed the instant motion asserting entitlement to attorneys' fees under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g). (ECF No. 22).

In opposing the motion, Plaintiff also cross-moved for an award attorneys' fees on its own behalf. (ECF No. 23).

## II. STANDARD OF REVIEW

In an action for recovery of benefits under ERISA, Section 1132(g)(1) of the ERISA statute provides that "the court in its discretion may allow a reasonable attorneys' fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

A determination of whether to award fees and costs in an ERISA action requires a two-step analysis. *Templin v. Indep. Blue Cross*, 785 F.3d 861, 864 (3d Cir. 2015).

First, the court must determine whether the moving party is eligible for such an award. *Id.* To be eligible, a claimant need not be a "prevailing party" in the ERISA litigation. *Id.* at 865. Rather, a movant must show "some degree of success on the merits." *Id.* A party satisfies this requirement if the court "can fairly call the outcome of the litigation 'some success on the merits' without conducting a lengthy inquiry into the question whether a particular party's success was 'substantial' or 'occurred on a central issue.'" *Id.* (internal citations omitted). "Conversely, a claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory." *Id.*

If the court finds that the movant is eligible for attorneys' fees under the first step, the court must then evaluate the five factors set forth by the Third Circuit Court of Appeals in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983), to determine whether to exercise its discretion and order an award. The five *Ursic* factors are as follows:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

*Ursic*, 719 F.2d at 673 (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)). While no single factor is dispositive of the movant's entitlement to attorneys' fees, the Third Circuit has nonetheless held that the court's explicit consideration of each factor is mandatory. *Templin*, 785 F.3d at 868.

If the court determines that the movant is entitled to fees based on this two-step process, the court must then determine the appropriate amount of the fee award. This calculation requires the court to consider "the amount of time reasonably expended by counsel for the prevailing party on the litigation, and compensate that time at a reasonable hourly rate to arrive at the lodestar." *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). "The amount of a fee award is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." *Templin*, 785 F.3d at 867.

### III. DISCUSSION

Defendant moves for an award of attorneys' fees under 29 U.S.C. § 1132(g)(1). Defendant argues that, as to the first step of the *Templin* analysis, the District Court's dismissal of the case at summary judgment constitutes "some degree of success on the merits" for ERISA fee-shifting purposes, and as to the second step, that the five *Ursic* factors each weigh in favor of an award of fees to Defendant. The Court will separately address each step of the *Templin* analysis below.

#### A. Whether Defendant has Shown "Some Degree of Success on the Merits"

Regarding the first step of the *Templin* analysis, the Court determines that the District Court's dismissal of this action at the summary judgment stage constitutes "some degree of success on the merits" for Defendant. *See Templin*, 785 F.3d at 864-65. In granting summary judgment

4

for Defendant based on lack of standing, the District Court vindicated Defendant's position, initially set forth as an affirmative defense, that it owed no additional money to Plaintiff relating to the procedure performed by Plaintiff on patient Robert S. (*See* Summary Judgment Opinion at 6). Plaintiff's lack of standing precluded any further payout to Plaintiff based on Robert S.'s ERISA-governed insurance plan, resolving the key issue in this case—Defendant's insurance liability to Plaintiff—in favor of Defendant.

Thus, "there is no doubt that the Defendant achieved 'some degree of success on the merits' as this Court dismissed all of Plaintiff's claims." *Griffin v. Gen. Mills, Inc.*, 157 F. Supp. 3d 1350, 1353 (N.D. Ga. 2016) (citing, *inter alia*, *Christian v. Honeywell Retirement Benefit Plan*, No. 13-4144, 2014 WL 1652222, at *3, *8 (E.D.Pa. Apr. 24, 2014) (granting attorneys' fees to defendants after their successful motion to dismiss plaintiff's ERISA claims as time-barred)).

B. <u>Whether the *Ursic* Factors Weigh in Favor of a Fee Award</u>

In the second step of the *Templin* analysis, the Court will consider each of the five *Ursic* factors to determine Defendant's entitlement to an award attorneys' fees.

1. *Factors One and Five: The Offending Party's Culpability or Bad Faith and the Relative Merits of the Parties' Positions*

Regarding the first *Ursic* factor, "[a] party is culpable if it is blamable; censurable or at fault." *Templin*, 785 F.3d at 868. "Culpable conduct is 'reprehensible or wrong' but need not involve 'malice or a guilty purpose.'" *Id.* Courts have found such culpability where a plaintiff's claim is "clearly frivolous on the merits" from the outset of the litigation. *Monkelis v. Mobay Chem.*, 827 F.2d 935, 937 (3d Cir. 1987). Additionally, courts may consider a party's culpability

relative to that of the opposing party and may thus consider the first and fifth *Ursic* factors in conjunction. *See id.*

Here, Plaintiff's claims, obtained on assignment from Robert S., were dismissed by the District Court based on the anti-assignment clause contained in the operative ERISA documents. As the District Court set forth in its Summary Judgment Opinion, "a majority of circuits, as well as courts in the Third Circuit, have given effect to anti-assignment provisions such as the one in this case and denied standing." (Summary Judgment Opinion at 5 (citing cases)). Following these cases, the District Court concluded that Plaintiff's assertion of standing based on assignment was contrary to the weight of recognized law in the district. (*Id.*).

Significantly, however, the District Court also noted that "the Third Circuit has not specifically spoken on the enforceability of anti-assignment clauses in ERISA-governed plans." (*Id*). Thus, despite the fact that the weight of precedent was against Plaintiff, at the time the Complaint was filed there was no *binding* precedent foreclosing Plaintiff from obtaining valid assignment of an ERISA claim in contravention of a contractual non-assignment clause.

Just five months after the District Court issued its Summary Judgment Decision in this case, the Third Circuit Court of Appeals ruled on the enforceability of anti-assignment clauses in a precedential opinion, determining that "anti-assignment clauses in ERISA governed health insurance plans as a general matter are enforceable." *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. May 16, 2018). The *American Orthopedic* court also noted the prior lack of binding authority on the enforceability of such provisions in the Third Circuit, stating that an aim of the *American Orthopedic* decision was to "confront a statutory gap yet to be filled." *Id.* at 451.

Based on the above analysis, this Court concludes that Plaintiff's conduct in bringing this case cannot fairly be labelled as "culpable," "in bad faith," or "clearly frivolous on the merits," because statutory and common-law gaps on the assignment-of-claims issue remained open for Plaintiff to pursue in good faith—until the Third Circuit subsequently closed those gaps in *American Orthopedic. See Am. Orthopedic & Sports Med.*, 890 F.3d at 451. As such, the Court concludes that the first and fifth factors weigh against Defendant's entitlement to attorneys' fees in this case.[1]

2. *Factor Two: Plaintiff's Ability to Satisfy an Award of Attorneys' Fees*

Regarding the second *Ursic* factor, Defendant contends that Plaintiff can easily afford to pay an award of reasonable attorneys' fees in part because "Plaintiff is a group of sophisticated, board certified surgeons, who do business in multiple states and who hold themselves out as world class leaders in spine surgery." (ECF No. 22-1, Defendant's moving brief ("Def. Mov. Br.") at 10). Plaintiff does not directly contest this characterization of its size and sophistication, arguing only that "Plaintiff's ability or inability to pay the fees requested is, at worst from Plaintiff's point of view, neutral." (ECF No. 23, Plaintiff's Brief in Opposition ("Pl. Opp. Br.") at 12). At the very least, Plaintiff has presented no evidence or argument suggesting that it would be *unable* to pay any such reward.

Accordingly, the Court concludes that the second factor is neutral in the Court's *Ursic* analysis.

---

[1] The court's finding of no culpability here rests primarily on the fact that this case was litigated to conclusion before the *American Orthopedic* court definitively ruled on the enforceability of ERISA anti-assignment provisions. However, since *American Orthopedic* is now binding precedent in the Third Circuit, the Court cautions that plaintiffs in this circuit proceed at their own peril in continuing to challenge the enforceability of anti-assignment clauses in EIRSA-governed insurance plans.

### 3. *Factor Three: The Deterrent Effect of an Award of Attorneys' Fees on Plaintiff*

Regarding the third *Ursic* factor, the Court must consider "whether an award of attorneys' fees would serve the objectives of ERISA by deterring similar conduct in the future." *Feinstein v. Saint Luke's Hosp.*, No. 10-4050, 2012 WL 4364641, at *4 (E.D. Pa. Sept. 25, 2012). Additionally, "deterrence is more obviously relevant when a plaintiff seeks fees after a defendant is found to have violated ERISA." *Griffin*, 157 F. Supp. 3d 1350, 1354 (N.D. Ga. 2016).

As the Court noted previously, the Third Circuit decision in *American Orthopedic*, issued subsequent to the District Court's Summary Judgment Decision in this case, appears to foreclose plaintiffs from litigating ERISA claims on assignment from another party where the ERISA-governed insurance plan contains a valid anti-assignment clause. *See* Section III.B.1., *supra* (discussing *Am. Orthopedic & Sports Med.*, 890 F.3d 445 (3d Cir.)). It is likely that the *American Orthopedic* decision will itself have the deterrent effect envisioned by the third *Ursic* factor, in that the decision will likely discourage plaintiffs from similarly litigating ERISA claims on assignment without careful consideration for the presumptive enforceability of anti-assignment provisions.

Because of this, the Court concludes that an award of attorneys' fees to Defendant as a deterrent for similar future conduct is unnecessarily redundant. The third *Ursic* factor therefore weighs against an award of attorneys' fees to defendant.

### 4. *Factor Four: The Benefit Conferred on Members of the Pension Plan*

Courts have noted that the "fourth factor is significant in determining the benefits conferred in a suit brought by ERISA plaintiffs, rather than the benefits of dismissing a meritless ERISA

suit." *Griffin*, 157 F. Supp. 3d at 1355 (quoting *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 721 (7th Cir.1981). Here, because Plaintiff's ERISA suit was dismissed at summary judgment by the District Court, the fourth factor is neutral in the Court's analysis.[2] *See id.*

On balance, the Court concludes that the five-factor *Ursic* analysis does not support an award of attorneys' fees for Defendant in this case. Defendant's motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g) is therefore DENIED.

### C. Plaintiff's cross motion

Plaintiff cross-moves for an award of attorneys' fees in its favor, arguing that "Defendant's conduct in bringing this Motion for An Award Attorneys' Fees constitutes, at a minimum, culpable conduct." (Pl. Opp. Br. at 14). While Plaintiff does not explicitly cite the statutory or common-law basis for its cross-motion, Plaintiff's citation to *Ursic* indicates that its cross-motion is one for attorneys' fees under the ERISA fee-shifting statute, 29 U.S.C. § 1132(g). (*Id.* (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir.1983) (setting forth five-factor analysis for ERISA fee-award motions))).

As discussed above, motions for attorneys' fees under 29 U.S.C. § 1132(g) must follow the two-step process set out in *Templin v. Indep. Blue Cross*, 785 F.3d 861, 864 (3d Cir. 2015). A party satisfies the first step of the analysis if the court "can fairly call the outcome of the litigation 'some success on the merits' without conducting a lengthy inquiry into the question whether a

---

[2] The Court notes Defendant's argument that plan participants would derive benefits from an award of attorneys' fees that would discourage future "baseless" ERISA claims. (Def. Mov. Br. at 12). However, such an award would still not be appropriate here, because as the Court concluded above, Plaintiff maintained a good-faith basis on which it could continue to litigate this case through to its conclusion at summary judgment. *See* Section III.B.1, *supra*.

9

particular party's success was 'substantial' or 'occurred on a central issue.'" *Id.* (internal citations omitted).

Here, to the extent that one can call the Court's denial of Defendant's motion a "success" for Plaintiff, this success cannot fairly be labelled "substantial" or "central" to the primary issues of the case. In this ERISA action, the central issue was whether Defendant was liable to Plaintiff for additional payments under the ERISA-governed insurance policy covering Plaintiff's patient, Robert S. The success or failure of Defendant's fee motion has no impact on the insurance liability issue, which had previously been resolved through dispositive motion practice. Plaintiff's success on Defendant's fee motion is therefore neither "substantial" nor on a "central issue" in this case. *See Templin*, 785 F.3d at 864.

As such, the Court concludes that Plaintiff's cross-motion for fees does not satisfy the first step of the *Templin* analysis.[3] Plaintiff's cross-motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g) is therefore DENIED.

## IV. CONCLUSION

The Court, therefore, having considered the parties' submissions, finds that the parties cross motions for attorneys' fees pursuant to 29 U.S.C. § 1132(g) are DENIED. An appropriate form of Order accompanies this Opinion.

JOSEPH A. DICKSON, U.S.M.J.    7/12/18

cc:   Hon. Jose L. Linares, U.S.D.J.

---

[3] Because Plaintiff's motion fails the first step of the *Templin* analysis, the Court need not proceed to the second step to determine whether or not to award fees. *See Templin*, 785 F.3d at 864.